135 P.3d 554 (2006)
133 Wash.App. 289
In re DETENTION OF Timothy KELLEY,
State of Washington, Respondent,
v.
Timothy Kelley, Appellant.
No. 54529-9-I.
Court of Appeals of Washington, Division 1.
May 30, 2006.
*555 Oliver Ross Davis, Washington Appellate Project, Seattle, WA, for Appellant.
Timothy Ashley Bradshaw, Attorney at Law, King County Courthouse, David J.W. Hackett, King Co. Pros. Office, Prosecuting Atty King County, King Co. Pros./App. Unit Supervisor, Seattle, WA, for Respondent.
BAKER, J.
¶ 1 Timothy Kelley was committed as a sexually violent predator. Although he was released on parole briefly in 1982, he was finishing his 20-year sentence for rape when the State filed its petition to commit Kelley. He appeals his commitment, arguing that the State was required to plead and prove a recent overt act, and the evidence was insufficient to support his commitment. We affirm, because Kelley was incarcerated for a sexually violent offense at the time the petition was filed, and there was sufficient evidence to commit him.

I.
¶ 2 Timothy Kelley admits to raping or molesting 10 children and more than 50 adult women. He was convicted of raping a 12-year-old girl in 1972, and in 1980 he was convicted of statutory first degree rape of a 9-year-old girl. For that offense, he was sentenced to 20 years in prison. Under the sentencing scheme in effect at the time, he received a suspended sentence and was sent to a sexual psychopathy program at Western State Hospital.
¶ 3 After two years at Western State, he was placed on outpatient status and was allowed to leave the facility for short periods of time. During one of these outings, he assaulted his girlfriend, was found possessing a bayonet, and left the county without permission. His suspended sentence was revoked, and he was sent to prison to serve his original 20-year sentence for first degree rape.
¶ 4 While incarcerated, Kelley was diagnosed with a number of mood disorders, and was rated as having moderate to high deviant sexual arousal, including pedophilic arousal. He participated off and on in a sex offender treatment program that he eventually completed after he started taking an anti-psychotic medication. A psychologist's assessment of Kelley just prior to his release date concluded that Kelley would need "significant ongoing treatment and intervention" to prevent reoffense if he were released into the community.
¶ 5 Prior to Kelley's release, the State filed a petition to have him committed as a sexually violent predator. After a full trial with extensive expert testimony, the jury found that Kelley should be committed.

II.
¶ 6 To civilly commit a person under Washington's Sexually Violent Predator Act,[1] the State must prove beyond a reasonable doubt that the person is a sexually violent predator.[2] A sexually violent predator is defined as: "[A]ny person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."[3]
¶ 7 If the person has been released from custody and is living in the community at the time the petition is filed, the State must also prove a "recent overt act" to establish current dangerousness.[4] A "recent overt act" is an act that causes, or creates a reasonable apprehension of, harm of a sexually violent nature.[5] If the person is totally confined in a secure facility for a sexually violent offense at the time the petition *556 is filed, no proof of a recent overt act is required.[6] Whether the State is required to prove a recent overt act in a commitment proceeding is a question of law that we review de novo.[7]

Recent Overt Act
¶ 8 Kelley argues that the State must prove a recent overt act because he was briefly released from the Western State sexual psychopathy program prior to the revocation of his suspended sentence in 1983. He cites In re Detention of Albrecht,[8]In re Detention of Davis,[9] and In re Detention of Broten[10] in support. This line of cases carves out a narrow exception to the rule that the State need not prove a recent overt act when the person is totally confined. The State must prove a recent overt act if (1) the person had been living in the community after serving a sentence and being released from custody; (2) the person was returned to custody after violating the terms of community placement; and (3) that violation was neither a sexually violent offense nor an act that would qualify as a recent overt act.[11]
¶ 9 Kelley's suspended sentence prior to a lengthy incarceration for rape is distinguishable from the community placement releases in Albrecht, Davis, and Broten. Release from Western State after his initial treatment was not community placement after time served; it was parole. Parole is "that portion of a person's sentence for a crime committed before July 1, 1984, served on conditional release in the community subject to board controls and revocation. . . ."[12] Kelley was not confined for a community placement violation when the petition was filed. He was serving the last months of a 20-year sentence for first degree statutory rape, a sexually violent offense.[13]
¶ 10 Proof of a recent overt act under these circumstances is not required. "Periods of temporary release after arrest and prior to extensive confinement do not modify the statute's unambiguous directive that the State need not prove a recent overt act when the subject of a sexually violent predator petition is incarcerated on the day the petition is filed."[14] It would also be an impossible standard for the State to meet because total confinement prevents such acts from occurring,[15] and Kelley has been confined since 1983. To require the State to prove an overt act in Kelley's case would write the word "recent" out of the statute.[16]
¶ 11 Kelley's 20-year confinement was not a penalty for choking his girlfriend or possessing a bayonet. It was for first degree rape, a sexually violent offense. That offense was proved beyond a reasonable doubt, so due process is satisfied. Kelley's due process rights were not violated because the State was not required to plead and prove a recent overt act.

Sufficiency of the Evidence
¶ 12 When this court reviews the sufficiency of the evidence in sexually violent predator commitment proceedings, the evidence when viewed in the light most favorable to the State must be sufficient to allow a rational trier of fact to conclude that the person has serious difficulty controlling behavior and fits the criteria of a sexually *557 violent predator.[17] Separate proof of lack of control, however, is not required;[18] an established link between the mental disorder and past sexual offense history is sufficient.[19] In a sexually violent predator commitment proceeding, the jury must have sufficient evidence to find beyond a reasonable doubt:
(1) That the respondent has been convicted of or charged with a crime of sexual violence; and
(2) That the respondent suffers from a mental abnormality or personality disorder; and
(3) That such mental abnormality or personality disorder makes the respondent likely to engage in predatory acts of sexual violence if not confined in a secure facility.[20]
The first two elements are not disputed. Kelley was convicted of crimes of sexual violence, and he suffers from both a mental abnormality and a personality disorder. Although the defense expert psychiatrist, Dr. O'Shaugnessy, disagreed that Kelley suffers from pedophilia, he did diagnose Kelley with paraphilia, described by O'Shaugnessy as a "deviant interest in sexual aggression," as well as antisocial personality disorder.
¶ 13 Ample evidence was presented by the State to support the conclusion that Kelley had serious difficulty controlling his sexually violent behavior and was likely to engage in acts of sexual violence if not confined to a secure facility. Dr. Yanisch, the State's expert psychologist, testified that Kelley was likely to commit crimes of sexual violence. He based this on extensive interviews with Kelley, a review of his criminal and psychological records, and the results of seven different screening tools, including actuarials. The results of those acutuarials varied, but generally placed Kelley above a 50 percent likelihood of reoffense. He also reviewed Kelley's current skill set for relapse prevention, and found it lacking. He observed that lack of a restrictive environment caused Kelley's behavior to deteriorate.
¶ 14 Dr. Tucker, the State's expert psychiatrist, also concluded that Kelley was likely to reoffend in a sexually violent manner. He diagnosed Kelley with pedophilia, paraphilia,[21] and a major depressive disorder. Dr. Tucker noted that Kelley's rape fantasies and sexualized anger had continued during Kelley's incarceration, and that his opinion was not based solely on Kelley's preincarceration behavior. Dr. Tucker concluded that Kelley had difficulty participating in treatment and doubted his ability to participate in a voluntary program, especially if he regained access to drugs and alcohol.
¶ 15 Kelley challenged these opinions by questioning the accuracy and validity of certain actuarials, and by presenting Dr. O'Shaugnessy, who concluded that Kelley did not meet the threshhold of "more likely than not" to commit a sexually violent offense. It is notable, however, that Dr. O'Shaugnessy conceded not only the reliability of two actuarials that predicted Kelley's high risk to recidivate, but admitted that actuarials can underestimate the risk of reoffense. Kelley's experts challenged the weight of the State's evidence, but did not overcome its sufficiency.
¶ 16 AFFIRMED.
WE CONCUR: DWYER, J., and APPELWICK, A.C.J.
NOTES
[1] Ch. 71.09 RCW.
[2] RCW 71.09.060(1).
[3] RCW 71.09.020(16).
[4] RCW 71.09.060(1); In re Personal Restraint of Young, 122 Wash.2d 1, 41-42, 857 P.2d 989 (1993).
[5] RCW 71.09.020(10).
[6] RCW 71.09.060(1).
[7] See In re Det. of Albrecht, 147 Wash.2d 1, 51 P.3d 73 (2002).
[8] 147 Wash.2d 1, 51 P.3d 73 (2002).
[9] 109 Wash.App. 734, 37 P.3d 325 (2002), rev. denied, 150 Wash.2d 1002, 77 P.3d 650 (2003).
[10] 115 Wash.App. 252, 62 P.3d 514 (2003), rev. denied, 150 Wash.2d 1010, 79 P.3d 445 (2003).
[11] In re Davis, 109 Wash.App. at 744-45, 37 P.3d 325.
[12] RCW 9.95.0001(5).
[13] RCW 71.09.020(15).
[14] In re Henrickson, 140 Wash.2d 686, 693, 2 P.3d 473 (2000). Notably, the "extensive" confinement referred to in Henrickson is 32 months. Henrickson, 140 Wash.2d at 693, 2 P.3d 473.
[15] Young, 122 Wash.2d at 41, 857 P.2d 989.
[16] RCW 71.09.020 does not specifically define "recent," but Webster's defines "recent" as "of or belonging to the present period or the very near past." Webster's Third New International Dictionary 1894 (1993).
[17] In re Det. of Thorell, 149 Wash.2d 724, 744-45, 72 P.3d 708 (2003).
[18] Thorell, 149 Wash.2d at 738, 72 P.3d 708.
[19] Thorell, 149 Wash.2d at 736, 72 P.3d 708.
[20] Thorell, 149 Wash.2d at 742, 72 P.3d 708.
[21] "Paraphilia" is a general term encompassing a number of types of deviant sexual fantasies, urges, and behaviors. Kelley's paraphilia specifically centered around rape.