161 P.3d 466 (2007)
In re the Detention of David T. FAIR, Appellant,
v.
STATE of Washington, Respondent.
No. 34399-1-II.
Court of Appeals of Washington, Division 2.
July 3, 2007.
*467 James Lewis Reese III, Port Orchard, WA, for Appellant.
Sarah Sappington, Office of the Atty General, Seattle, WA, for Respondent.

PUBLISHED IN PART
VAN DEREN, A.C.J.
¶ 1 David T. Fair appeals his commitment as a sexually violent predator (SVP) under Chapter 71.09 RCW, arguing that the due process clauses of the state and federal constitutions required the State to allege and prove a recent overt act (ROA) and that the evidence was insufficient to support a finding that he is a SVP. Because Fair has been incarcerated continuously for both a sex offense and a non-sex offense, and the evidence is sufficient to support the conclusion that he should be committed to the Special Commitment Center as a SVP, we affirm.

FACTS
¶ 2 In 1988, Fair pleaded guilty to one count of second degree child molestation. The trial court imposed a special sex offender sentence under former RCW 9.94A.120(7) (1988), the special sex offender sentencing alternative (SSOSA).[1] The SSOSA included a suspended sentence of 600 days' confinement with credit for 137 days served. It also required him to spend 180 days on work release, 10 years under community supervision, and to complete sex offender treatment.
¶ 3 On November 1, 1989, the State moved to revoke the SSOSA based on Fair's failure to remain in sex offender treatment and report to the Department of Corrections.[2] On November 10, 1989, Fair met an acquaintance, Steven Slagle, in a restaurant in Kitsap County. The two left the restaurant together with Fair driving Slagle's pickup. "At some point Slagle got out of his truck, and [Fair] hit him on the back of the head." Clerk's Papers (CP) at 122. He continued to beat Slagle and, when Slagle escaped into the *468 brush, Fair drove away in Slagle's truck. Five days later Fair was in New Mexico, where he robbed an elderly couple of $600 at gunpoint. While fleeing the scene, he ran through a road block and struck another vehicle, injuring the occupants. As a result of these events, a New Mexico court sentenced Fair to serve 90 months in prison.
¶ 4 Fair was extradited to Washington where the trial court sentenced him to 87 months for the 1989 Kitsap County robbery, consecutive to the New Mexico sentence. The trial court also revoked his SSOSA and required that he serve 20 months in prison on the child molestation conviction concurrent with the 87 month robbery sentence.
¶ 5 Fair was scheduled to be released from prison on June 28, 2004. On June 23, 2004, the State filed a petition to commit him as a SVP. Fair waived his right to a jury trial and the case proceeded to a bench trial.
¶ 6 Lisa Dandesku, Fair's primary treatment provider at the Department of Corrections Sexual Offender Treatment Program (SOTP), testified that Fair completed the twelve-month treatment program in March 2004. During his treatment, Fair admitted to having had sexual contact with 19 different individuals, including 17 child victims. Dandesku testified that Fair "couldn't really see how his sexual offending had negatively impacted anybody." Report of Proceedings (RP) at 44. Fair also minimized his violent, non-sexual offenses.
¶ 7 During treatment, Fair frequently reported sexual arousal and masturbation to thoughts of minor girls. Dandesku testified that Fair "did not want to stop masturbating to minors," and did not think there was anything wrong with having sex with children. RP at 48. At the conclusion of treatment, the clinical team assessed Fair as a high risk to reoffend.
¶ 8 Dr. Dennis Doren, a psychologist, also testified for the State. Doren testified that Fair admitted offending against 16 individuals, generally in the 8 to 12-year-old range. Although Fair admitted having sexual fantasies about children, he enjoyed the fantasies and was reluctant to give them up. Doren testified that with convicted sex offenders, sexual interest in children highly correlated with sexual reoffending. He diagnosed Fair with pedophilia, paraphilia (with a descriptor of urophilia),[3] alcohol dependence, cannabis abuse, and antisocial personality disorder.
¶ 9 Doren concluded that Fair's pedophilia was a mental abnormality that predisposed him to commit criminal sexual acts to a degree that made him a menace to the health and safety of others. Doren opined that Fair's antisocial personality disorder caused him to have "serious difficulty controlling his sexually violent behavior," and that Fair was likely to engage in predatory acts of sexual violence if not confined to a secure facility. RP at 291.
¶ 10 To predict the likelihood that Fair would reoffend, Doren relied on several actuarial risk assessment instruments. Because the tests produced mixed results, Doren could not reach a conclusion about Fair's likelihood of reoffending based solely on the actuarial instruments. Accordingly, Doren considered other risk factors, specifically, whether Fair had a high degree of psychopathy coupled with sexual deviance.
¶ 11 To assess Fair's psychopathy, Doren relied on the Psychopathy Check List Revised (PCL-R), a psychological test used "to assess the degree to which people have a certain type of personality structure." RP at 318. Under this testing method, the highest score measuring whether someone is a "prototypic psychopath" is 40. RP at 320. Fair scored 30, which ranked him as having a high degree of psychopathy. Doren testified that even without sexual deviancy, a high degree of psychopathy correlated with a higher risk of sexual recidivism.
¶ 12 Doren also concluded that Fair met the criteria for sexual deviance based on his pedophelia diagnosis. Fair was not tested with a penile plethysmograph (PPG),[4] but Doren testified that Fair's unwillingness to give up his fantasies and his ambivalence *469 about them could easily substitute for what a PPG would measure. Doren testified that even without Fair's self-reports of additional victims, he would conclude that Fair met the criteria for sexual deviancy based on his repeated reports of sexually fantasizing about "something other than consenting adults." RP at 325.
¶ 13 In his defense, Fair testified that he fabricated fantasies and offenses in order to get into a treatment program instead of serving his time in the general prison population. Theodore Donaldson, a specialist in forensic clinical psychology, testified on Fair's behalf. Donaldson believed that Fair had a thirty-six percent probability of recidivism over a fifteen year period based on his score of four on the "Static-99" recidivism test, one of the actuarial instruments that Doren also administered. According to Donaldson, Doren's recidivism calculation was too high because he should not have included the unverified incidents that Fair reported.
¶ 14 The trial court found that Doren's testimony was more persuasive and credible than Donaldson's. It concluded beyond a reasonable doubt that Fair suffered from a mental abnormality and was likely to engage in sexually violent acts if not confined. Accordingly, the trial court granted the State's petition and ordered Fair committed as a SVP on January 5, 2006. Fair appeals.

ANALYSIS
I. RECENT OVERT ACT
¶ 15 Fair argues that the trial court erred in denying his motion to dismiss based on the State's failure to allege a ROA[5] and claims that he was denied due process under the Fifth[6] and Fourteenth[7] Amendments of the United States Constitution and Article I, Section 3[8] of the Washington State Constitution. Fair contends that that because the trial court temporarily released him into the community on a SSOSA, proof of a ROA was constitutionally and statutorily required before he could be committed as a SVP. He further contends that because his sentence for child molestation had expired by the time the State filed its petition and he was held only on his robbery sentence, an ROA was required before the State could show that he was a SVP. We disagree.
¶ 16 No person may be deprived of life, liberty, or property without due process of law. U.S. CONST. amends. V, XIV; Wash. CONST. art. I, § 3. "Commitment for any reason constitutes a significant deprivation of liberty triggering due process protection." In the Matter of the Detention of Thorell, 149 Wash.2d 724, 731, 72 P.3d 708 (2003). An SVP statute satisfies due process if it "couples proof of dangerousness with proof of an additional element, such as `mental illness,' because the additional element limits confinement to those who suffer from an impairment `rendering them dangerous beyond their control.'" Thorell, 149 Wash.2d at 731-32, 72 P.3d 708 (quoting Kansas v. Hendricks, 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).
¶ 17 Although chapter 71.09 RCW excuses the State from proof of a ROA when a petition *470 is filed against an incarcerated individual, the commitment at issue must still satisfy due process. See RCW 71.09.020(7) (likelihood to engage in predatory acts of sexual violence if not confined in a secure facility "must be evidenced by a recent overt act if the person is not totally confined at the time the petition is filed"); Thorell, 149 Wash.2d at 731-32, 72 P.3d 708. Our Supreme Court has held that due process does not require proof of a ROA "when, on the day the petition is filed, an individual is incarcerated for a sexually violent offense." In re Henrickson, 140 Wash.2d 686, 689, 2 P.3d 473 (2000).
¶ 18 In Henrickson, the two defendants were briefly released into the community pending sentencing and appeal. 140 Wash.2d at 689, 691, 2 P.3d 473. They argued that due process required the State to prove a ROA because they had spent time in the community after committing the current offenses. Henrickson, 140 Wash.2d at 693, 2 P.3d 473. The Henrickson court rejected this argument:
We hold no proof of a recent overt act is constitutionally or statutorily required when, on the day the petition is filed, an individual is incarcerated for a sexually violent offense, [former] RCW 72.09.020(6) [2000], or an act that by itself would have qualified as a recent overt act, [former] RCW 71.09.020(5) [2000].
Henrickson, 140 Wash.2d at 689, 2 P.3d 473.
¶ 19 More recently, Division I of this court affirmed the SVP commitment of an offender who was serving a 20-year suspended sentence following his conviction for first degree statutory rape in 1980. In the Matter of the Detention of Kelley, 133 Wash.App. 289, 135 P.3d 554 (2006). The trial court revoked Kelley's suspended sentence and returned him to prison to serve the remainder of his sentence "after he assaulted his girlfriend, was found possessing a bayonet, and left the county without permission." Kelley, 133 Wash.App. at 291, 135 P.3d 554. Rejecting Kelley's argument that the State had to prove a ROA, the court stated:
"Periods of temporary release after arrest and prior to extensive confinement do not modify the statute's unambiguous directive that the State need not prove a recent overt act when the subject of a sexually violent predator petition is incarcerated on the day the petition is filed." It would also be an impossible standard for the State to meet because total confinement prevents such acts from occurring, and [the defendant] has been confined since 1983. To require the State to prove an overt act in [the defendant's] case would write the word "recent" out of the statute.
Kelley, 133 Wash.App. 289 at 294, 135 P.3d 554 (footnotes omitted).
¶ 20 In all relevant respects, Fair's case is indistinguishable from Henrickson and Kelley. When the State filed its petition, Fair was incarcerated after revocation of the community treatment portion of his SSOSA. He had remained in continuous custody on the robbery conviction following expiration of the 20-month sentence for second degree child molestation, which is a sexually violent offense under RCW 71.09.020(15). As in Henrickson, Fair was "previously released into the community but [was] incarcerated on the day a sexually violent predator petition [was] filed," following his conviction for a sexually violent offense or an act that by itself would have qualified as a recent overt act. Henrickson, 140 Wash.2d at 688-89, 2 P.3d 473.
¶ 21 While Fair correctly points out that, unlike Henrickson, Fair's sentence for the sexual offense had expired before the State filed its SVP petition, this difference is not relevant. Fair was in continuous confinement from the time he returned to prison on the second degree child molestation conviction until his scheduled release date on the first degree robbery conviction. He was not released into the community between the incarceration for the sexually violent offense and the robbery sentence and, thus, he had no opportunity to commit a ROA in the community. Requiring proof of a ROA under these circumstances would be absurd. See Henrickson, 140 Wash.2d at 695, 2 P.3d 473.
¶ 22 Fair's argument would effectively preclude the State from filing a SVP petition when an offender serves concurrent sentences and the non-sexual offense sentence exceeds the sentence for the sexually violent offense. For instance, if the State filed its *471 petition at the expiration of Fair's child molestation sentence, the filing would have preceded Fair's actual release date by a considerable amount of time and Fair may have complained that the filing violated RCW 71.09.030.[9] Generally, we will not interpret a statute to lead to strained or absurd results. State v. Keller, 98 Wash.2d 725, 728, 657 P.2d 1384 (1983). Here, Fair's interpretation of the SVP statute would lead to the absurd result of allowing Fair to escape SVP commitment procedures merely because he committed another serious crime while briefly released into the community. We do not believe that this was the legislature's intent when enacting RCW 71.09.030. Fair's argument undermines the State's compelling interest in protecting the community from dangerous sex offenders.
¶ 23 We conclude that the expiration of one sentence, without an intervening release to the community, does not prevent the State from filing a SVP petition while a defendant is still incarcerated, so long as one of the offenses leading to the incarceration meets the definitions of RCW 71.09.020(15)[10] or RCW 71.09.020(10).[11]See Henrickson, 140 Wash.2d at 688-89, 2 P.3d 473. Thus, we affirm the trial court's decision and hold that neither the SVP statute nor due process requires that a ROA be proven under these circumstances.
¶ 24 A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER and QUINN-BRINTNALL, JJ.
NOTES
[1] Former RCW 9.94A.120 (1988), provided that an offender is eligible for the special sex offender sentencing alternative "when an offender [has been] convicted of a sex offense other than a violation of RCW 9A.44.040 or RCW 9A.44.050 and has no prior convictions for a sex offense or any other felony sexual offenses in this or any other state, the sentencing court, . . . may order an examination to determine whether the defendant is amenable to treatment." Former RCW 9.94A.120(7)(a). The SSOSA was recodified to RCW 9.94A.670 in 2000. See Laws of 2000, ch. 28, § § 5, 20.
[2] Under the SSOSA sentence the trial court could order execution of Fair's sentence if the State showed that: (1) he had contact with the victim or other female children, (2) he had contact with children under 18 years of age, handicapped persons, or victims of sexual abuse or rape without his probation officer's approval and proper supervision, (3) he used intoxicants or allowed the use of illicit substances on his premises, (4) he failed to undergo routine drug and alcohol screening, (5) he failed to undergo sex offender treatment for up to four years, (6) he failed to maintain a residence or employment as his community corrections officer (CCO) required, (7) he failed to notify his CCO of any change in address or employment, (8) he failed to report to the court and to his CCO as required, (9) he possessed or viewed pornographic material, (10) he failed to submit to polygraph and plethysmograph evaluations, (11) he failed to pay the financial obligations outlined in his judgment and sentence, (12) he failed to obey all laws, orders and rules of the State, Court, and work release, and (13) he committed any sex related offenses or crimes involving alcohol or drugs.
[3] Doren described paraphilia as recurrent sexual fantasies involving something other than a consenting adult that lasts at least six months and urophilia as sexual fantasies involving urine.
[4] A PPG is "a physiological test of a man's sexual arousal." RP at 332.
[5] RCW 71.09.020(10) provides:

"Recent overt act" means any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.
[6] U.S. Const. amend. V provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
[7] U.S. CONST. amend. XIV, § 1 provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[8] Wash. CONST. art. I, § 3 provides: "No person shall be deprived of life, liberty, or property, without due process of law."
[9] RCW 71.09.030 states in relevant part:

When it appears that: (1) a person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement on, before or after July 1, 1990; . . . and it appears that the person may be a sexually violent predator, the prosecuting attorney of the county where the person was convicted or charged or the attorney general if requested by the prosecuting attorney may file a petition alleging that the person is a "sexually violent predator" and stating sufficient facts to support such allegation.
[10] RCW 71.09.020(15) defines a sexually violent offense.
[11] RCW 71.09.020(10) defines a recent overt act.