219 P.3d 89 (2009)
In the Matter of the DETENTION OF David Tyler FAIR, Petitioner.
No. 80498-2.
Supreme Court of Washington, En Banc.
October 22, 2009.
*90 James Lewis Reese, III, Attorney at Law, Port Orchard, WA, for Petitioner.
Sarah Sappington, Office of the Atty. General, Todd Richard Bowers, Attorney General-CJD, Seattle, WA, Sara J. Olson, Attorney Generals Office, Olympia, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 When David Tyler Fair was 22, he molested several young girls. The State filed charges against him, and he agreed to plead guilty to one count of child molestation in the second degree. He was sentenced to 20 months but received a special sex offender sentencing alternative (SSOSA)[1] suspending the jail sentence and allowing conditional release on community supervision. In following years, Fair committed other crimes for which he spent a total of 15 years in prison in two states. While incarcerated, Fair admitted to 17 other incidents involving sexual contact with kids. Before Fair was released, Washington successfully petitioned to civilly commit him as a sexually violent predator. Fair now argues that the State should not be able to commit him because the State had not proved that he committed a recent overt act of sexual violence. This court affirms the Court of Appeals and holds that the State was not required to plead or prove a recent overt act during Fair's commitment proceedings.

FACTS AND PROCEDURAL HISTORY
¶ 2 Fair was 22 years old when he went to a neighbor's house during a children's birthday party and gave alcohol to three young girls, whose ages were 12-13. He fondled and aggressively pursued and kissed the girls. The State filed charges of child molestation in the second degree. Fair agreed to plead guilty to one count. The court imposed a 20-month sentence for the admitted molestation charge but suspended the jail sentence in lieu of a SSOSA. Fair spent approximately six months on community supervision but failed to attend required sex offender treatment and did not properly report to the Department of Corrections (DOC). The State moved to revoke his SSOSA.
¶ 3 Before the motion to revoke his SSOSA was heard, Fair fled to New Mexico, but only *91 after robbing an acquaintance. In New Mexico, Fair committed several other nonsexual crimes and was convicted and incarcerated in that state.
¶ 4 While serving his New Mexico sentence, Fair pleaded guilty to the Washington robbery and judgment and sentence was entered in Washington.[2] The Washington court sentenced Fair to serve 87 months for his Washington crimes, to be served consecutive to his New Mexico sentence. The court also revoked Fair's SSOSA and reinstated the 20-month sentence for his child molestation conviction, to be served concurrent with the robbery sentence. Upon completion of his New Mexico sentence, Fair was transferred to DOC custody to serve the child molestation and robbery sentences in this state.
¶ 5 While Fair was incarcerated, he participated in a treatment program for sexual offenders. During this treatment, Fair admitted to his primary treatment provider that prior to his molestation conviction he had sexual contact with 17 child victims generally between 8 and 12 years old, but as young as 2 years. According to his treatment provider, Fair could not see how his sexual offending had negatively impacted anybody. Additionally, Fair said that he did not think there was anything wrong with having sex with children and frequently reported sexual arousal and masturbation to thoughts of minor girls.
¶ 6 Days prior to his scheduled release date, the State filed a petition to have Fair involuntarily committed pursuant to the sexually violent predators act (SVPA), chapter 71.09 RCW. Because Fair had not been released into the community between his incarceration for the sexually violent offense and the robbery, the State did not allege at trial that Fair had committed a recent overt act of sexual violence. Fair's treatment provider testified to his admissions in treatment. The State's expert, Dr. Dennis Doren, testified that during his interview with Fair, he had admitted to committing 16 sexual offenses against children and enjoying sexual fantasies about children. Dr. Doren diagnosed Fair with pedophilia, paraphilia/urophilia[3] and an antisocial personality disorder. Dr. Doren testified that with convicted sex offenders, sexual interest in children highly correlated with sexual reoffending. Dr. Doren concluded that Fair's pedophilia combined with his antisocial personality disorder made Fair likely to engage in predatory acts of sexual violence if not confined to a secure facility.
¶ 7 At the conclusion of Fair's bench trial,[4] the court found beyond a reasonable doubt that Fair was a sexually violent predator and ordered that he be involuntarily committed for treatment. Fair appealed, and the Court of Appeals affirmed the trial court. Fair v. State, 139 Wash.App. 532, 161 P.3d 466 (2007). Fair petitioned this court for review, which was granted. In re Det. of Fair, 163 Wash.2d 1017, 180 P.3d 1291 (2008).

ISSUE
¶ 8 Whether the State must plead and prove a recent overt act where the offender has been confined continuously since being incarcerated for a predicate sexual conviction.

STANDARD OF REVIEW
¶ 9 The applicability of the constitutional due process guaranty is a question of law subject to de novo review. Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 149 Wash.2d 17, 24, 65 P.3d 319 (2003).

ANALYSIS

I. Background

A. The Sexually Violent Predators Act

¶ 10 The SVPA, chapter 71.09 RCW, authorizes the State to petition for the involuntary commitment of sexually violent predators, *92 defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." Former RCW 71.09.020(16) (2006); former RCW 71.09.030 (2008). A sexually violent offense is defined to include child molestation in the second degree. Former RCW 71.09.020(15). To obtain an order of commitment, the State must prove beyond a reasonable doubt that the person is a sexually violent predator (SVP). RCW 71.09.060(1). If, on the date that the petition is filed, the person is living in the community (i.e., not incarcerated), the State has the additional burden of proving beyond a reasonable doubt that the person had committed a recent overt act.[5]Id.
¶ 11 We have recently noted that the SVPA was enacted in Title 71 RCW, "Mental Illness," to compensate for perceived deficiencies in Washington's mental illness commitment law. The legislature expressly recognized that the prior version of chapter 71.05 RCW was "`inadequate to address the risk to reoffend because during confinement [sexual] offenders do not have access to potential victims and therefore they will not engage in an overt act during confinement....'" In re Det. of Lewis, 163 Wash.2d 188, 193, 177 P.3d 708 (2008) (quoting RCW 71.09.010).
¶ 12 Although the SVPA excuses the State from proving a recent overt act when a petition is filed against an incarcerated individual, the commitment must still satisfy constitutional due process. In re Det. of Henrickson, 140 Wash.2d 686, 694, 2 P.3d 473 (2000).

B. Due Process

¶ 13 We have had several occasions to define the requirements of due process in the recent overt act context. See, e.g., id. A state has a legitimate interest in treating the mentally ill and protecting society from their actions. In re Det. of Albrecht, 147 Wash.2d 1, 7, 51 P.3d 73 (2002) (citing Addington v. Texas, 441 U.S. 418, 426, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). Constitutional principles must be followed, including the requirement that no person may be deprived of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV; Wash. Const. art. I, § 3.[6] Involuntary civil commitment is a substantial curtailment of individual liberty so due process is required. Lewis, 163 Wash.2d at 193, 177 P.3d 708.
¶ 14 A person must be both mentally ill and dangerous to be civilly committed consistent with due process. In re Pers. Restraint of Young, 122 Wash.2d 1, 27, 857 P.2d 989 (1993). In the historical civil commitment context, we have held "a showing of a substantial risk of physical harm as evidenced by a recent overt act" is necessary to comport with substantive due process. In re Harris, 98 Wash.2d 276, 284, 654 P.2d 109 (1982); Henrickson, 140 Wash.2d at 701-02, 2 P.3d 473. In the context of SVP commitments, we have held that because SVPs are often incarcerated prior to commitment, a recent overt act requirement under such circumstances "`would be impossible to meet.'" Henrickson, 140 Wash.2d at 700-701, 2 P.3d 473 (quoting Young, 122 Wash.2d at 41, 857 P.2d 989).
¶ 15 Due process does not require that "`"the absurd be done before a compelling state interest can be vindicated."'" Id. at 695, 2 P.3d 473 (quoting Young, 122 Wash.2d at 41, 857 P.2d 989 (quoting People v. Martin, 107 Cal.App.3d 714, 165 Cal.Rptr. 773 (1980))). Requiring proof of a recent overt act for an incarcerated sex offender is absurd because incarcerated sex offenders do not have access to potential victims. Id. (quoting Young, 122 Wash.2d at 41, 857 P.2d *93 989); see also Lewis, 163 Wash.2d at 193, 177 P.3d 708 (quoting RCW 71.09.010); id. at 201-02, 177 P.3d 708 (affirming the Court of Appeals' reasoning in this case).[7] Thus, in the case of a person incarcerated for a sexually violent offense, or for an act that would itself qualify as a recent overt act, due process does not require the State to prove a recent overt act occurred between arrest for such an offense or act and release from incarceration. See Henrickson, 140 Wash.2d at 695, 2 P.3d 473.

II. Due Process Does Not Require the State To Prove a Recent Overt Act When the Offender Was Temporarily Released in the Community Prior to a Lengthy Incarceration

¶ 16 Fair first argues that, because he was released into the community between his child molestation conviction and the filing of the SVP petition, the State is required to prove a recent overt act during that time period. For this proposition Fair relies on Albrecht, 147 Wash.2d 1, 51 P.3d 73.
¶ 17 In Albrecht, the respondent served a 48-month sentence for second degree child molestation. Id. Albrecht completed serving his sentence and was released to community placement. Id. Thirty days later, Albrecht was arrested for violating the conditions of his community placement. Id. at 5, 51 P.3d 73. Albrecht entered into plea negotiations with the State and accepted a 120-day sentence in jail. Id. While Albrecht was serving the sentence for violating the conditions of his community placement, the State filed a petition to commit him as an SVP. Id. at 4-5, 51 P.3d 73. The State did not allege or prove a recent overt act occurred during Albrecht's release following his 48 month sentence. We held that due process required the State to prove a recent overt act because it was no longer an impossible burden once Albrecht had been released into the community. Id. at 10, 51 P.3d 73.
¶ 18 Fair essentially asks us to extend Albrecht to require proof of a recent overt act where there has been community release prior to a lengthy incarceration. We decline to do so. Our holding in Albrecht applied only to a recent release from confinement not a prior release into the community before a lengthy incarceration:
[O]nce the offender is released into the community, as Albrecht was, due process requires a showing of current dangerousness.
... An individual who has recently been free in the community and is subsequently incarcerated for an act that would not in itself qualify as an overt act cannot necessarily be said to be currently dangerous.
Id. at 10-11, 51 P.3d 73 (emphasis added). In contrast, Fair had been in continuous confinement for 12 years prior to the State's filing. Evidence of his acts while he was in the community under his SSOSA over 12 years ago would not be recent or current evidence of his present dangerousness. His latest incarceration, however, was also to serve his sentence for child molestation.
¶ 19 This case is controlled instead by Henrickson, 140 Wash.2d 686, 2 P.3d 473.[8] Henrickson was convicted of attempted kidnapping in the first degree and communication with a minor for immoral purposes. Id. at 689, 2 P.3d 473. Henrickson remained free on bond for three years, during the pendency of his appeal. Id. Henrickson eventually served a 50-month sentence. Id. The day before Henrickson's scheduled release from the sexual molestation charges, *94 the State filed an SVP petition. Id. at 690, 2 P.3d 473.
¶ 20 In Henrickson's companion case, Halgren was convicted of unlawful imprisonment involving a prostitute and was released into the community for three months pending sentencing. Id. at 691, 2 P.3d 473. Halgren received an exceptional sentence, was incarcerated, and appealed. Id. Halgren served approximately 35 months before his sentence was overturned on appeal.[9] The State filed an SVP petition against him before his release from confinement (again, for sexual violation).
¶ 21 Both Henrickson and Halgren claimed their postarrest community release required the State to prove a recent overt act. We held that when, "on the day a sexually violent predator petition is filed, an individual is incarcerated for a sexually violent offense, RCW 71.09.020(6), or for an act that would itself qualify as a recent overt act, RCW 71.09.020(5), due process does not require the State to prove a further overt act occurred between arrest and release from incarceration." Id. at 695, 2 P.3d 473.
¶ 22 Fair's situation is not distinguishable from Henrickson's for purposes of due process analysis. Just like Henrickson and Halgren, Fair was released on community supervision prior to being incarcerated for a crime that would qualify under the sexually violent predator statute as a sexually violent offense or as a recent overt act. Id. at 697-98, 2 P.3d 473. Fair served a lengthy sentence of continuous confinement and was jailed again for crimes that included sexual violation of child molestation and remained incarcerated when the State filed an SVP petition.
¶ 23 Accordingly, we reject Fair's argument and hold that under Henrickson due process did not require the State to prove a recent overt act during Fair's community release prior to confinement.

III. Due Process Does Not Require Proof of a Recent Overt Act When the Respondent Has Been Continuously Incarcerated Even If He Has Completed His Sentence for the Sexually Violent Offense

¶ 24 In a related argument, Fair contends that, because he finished serving his shorter sentence for child molestation before finishing his longer concurrent sentence for robbery, he was not technically "incarcerated for a sexually violent offense" at the time the State filed its petition. Id. at 689, 2 P.3d 473.[10] Hence, under Fair's reasoning, the Henrickson exception for incarcerated sex offenders does not apply to him and the general due process rule of Harris, 98 Wash.2d at 284, 654 P.2d 109, requires the State to prove a recent overt act.
¶ 25 This argument is without merit. Due process does not require that the absurd be done before the compelling state interests can be vindicated. Henrickson, 140 Wash.2d at 695, 2 P.3d 473. Fair's situation is indistinguishable from Henrickson's for purposes of due process analysis. Requiring proof of a recent overt act by an incarcerated person is just as absurd in Fair's case as it was in Henrickson's. Both were continuously confined after being incarcerated for a sexually violent offense or an act that by itself would have qualified as a recent overt act. The fact that Fair continued to be incarcerated after serving his (shorter) child molestation sentence does not require the State to prove that a recent overt act occurred during his incarceration.[11] Accordingly, we expressly apply the holding in Henrickson to include all persons who have been continuously confined since being incarcerated for a sexually *95 violent offense, or an act that qualifies as a recent overt act under the statute.

CONCLUSION
¶ 26 Fair asks us to hold that due process principles required the State to prove a recent overt act in his SVP commitment trial even though he had been continuously incarcerated for child molestation and other nonsexual crimes. Fair's arguments are contrary to the statute and our due process jurisprudence. Accordingly, we reject those arguments and uphold his commitment as an SVP. We affirm the Court of Appeals and the trial court's commitment order.
WE CONCUR: SUSAN OWENS and BARBARA A. MADSEN, JJ.
FAIRHURST, J. (concurring).
¶ 27 I agree with the lead opinion that the State was not required to prove that David Tyler Fair committed a recent overt act[1] in order to civilly commit him as a sexually violent predator (SVP). I write separately to offer different statutory and constitutional analyses.
¶ 28 While the lead opinion reaches the correct result in holding the State is not statutorily required to allege and prove a recent overt act when the respondent is incarcerated, its analysis is conclusory and does not provide an explanation for its holding. The dissent lays out its position that former RCW 71.09.030(5) (2008), recodified as RCW 71.09.030(1)(e), requires the State to prove a recent overt act but ignores the other statutory language and our case law. I would hold the State was not required to prove Fair committed a recent overt act because the plain language of chapter 71.09 RCW is clear. Former RCW 71.09.030 provides that a prosecutor can file an SVP petition when it appears:
(1) A person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement ... or (5) a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act.
RCW 71.09.060(1) provides that the court or jury shall determine whether the person is an SVP and imposes the additional requirement: "If, on the date that the petition is filed, the person was living in the community after release from custody, the state must also prove beyond a reasonable doubt that the person had committed a recent overt act." "`Total confinement'" has been defined by RCW 9.94A.030(47) as "confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060." In re Det. of Albrecht, 147 Wash.2d 1, 9-10, 51 P.3d 73 (2002). In Albrecht, we held the plain meaning of former RCW 71.09.030 did not require the State to prove a recent overt act when it filed the SVP petition after Albrecht had been released on community supervision, but was serving a 120-day jail sentence for violating a term of the supervision. 147 Wash.2d at 4-6, 9-10, 51 P.3d 73.
¶ 29 Given the plain meaning of former RCW 71.09.030 and RCW 71.09.060 and our holding in Albrecht, the statute is clear that the State is required to prove a recent overt act if it files the SVP petition when the respondent is not in total confinement. As Fair was in prison and, thus, totally confined, when the State filed its petition, the State was not statutorily required to allege and prove beyond a reasonable doubt that Fair committed a recent overt act.
¶ 30 Because the statute does not require the State to prove a recent over act, I turn to analyze whether the constitutional right to due process does. Unlike the lead opinion and dissent, I would hold that, when the State files a petition seeking to commit an incarcerated individual as an SVP, due process requires the State to prove a recent overt act if it can be proved that the alleged *96 SVP's diagnosis and pattern of behavior indicate the individual had an adequate opportunity, while incarcerated, to commit a recent overt act against the type of victim the individual was predisposed to victimize. Because Fair's diagnosis and pattern of behavior is focused toward young children, particularly minor girls, and because Fair's several years of incarceration prevented him from having the opportunity to again victimize that segment of society, I agree with the lead opinion that the State was not required to prove Fair committed a recent overt act.
¶ 31 To understand why due process requires such a holding, it is necessary to examine the rationale for the recent overt act requirement. In In re Personal Restraint of Young, 122 Wash.2d 1, 39-43, 857 P.2d 989 (1993), we first recognized the due process requirement that the State is required to prove an alleged SVP committed a recent overt act. We found the requirement after conducting a strict scrutiny analysis of the SVP statutory scheme and determining that a recent overt act requirement ensures that the statute is narrowly tailored to achieve the compelling state interest of protecting society from sex predators. Id. at 26-27, 39-43, 857 P.2d 989. We determined that the recent overt act requirement ensured satisfaction of due process concerns, mostly that the mental illness be real and current enough to justify the deprivation of liberty. Id. at 40-41, 857 P.2d 989 (citing In re Harris, 98 Wash.2d 276, 654 P.2d 109 (1982) (establishing the recent overt act requirement for regular civil commitments)). In Young, we limited the requirement to individuals who were not incarcerated when the SVP petition was filed. Id. at 41, 857 P.2d 989. We provided a blanket statement that "[f]or incarcerated individuals, a requirement of a recent overt act under the Statute would create a standard which would be impossible to meet." Id.
¶ 32 When we first recognized the recent overt act requirement in Young, we relied extensively on People v. Martin, 107 Cal. App.3d 714, 165 Cal.Rptr. 773 (1980). In Martin, the California Court of Appeal rejected an argument that due process required the State always to prove a recent overt act, even when the respondent is incarcerated. Id. at 725, 165 Cal.Rptr. 773. The court reasoned it would be absurd to impose such a requirement when there was little or no opportunity for the person to commit a recent overt act and thus demonstrate his or her dangerousness. The court wrote:
As in the present case, a [mentally disordered sex offender] may have a predisposition to commit a specific type of sexual offenseone that cannot, as a practical matter, be committed during confinement. Here, appellant's predisposing disorders have repeatedly driven him to force sexual relations upon preadolescent girls (the last one was four years old). Atascadero [State Hospital] necessarily provides small opportunity for appellant to act out his current drives with such girls. Must appellant therefore be released notwithstanding the existence of other strong evidence of his continuing disorder and dangerous disposition? Our answer is "no."
Id. (footnote omitted). Our holding in Young appears to agree with that reasoning, particularly when we noted that confinement prevents overt acts from occurring. 122 Wash.2d at 41, 857 P.2d 989.
¶ 33 Nonetheless, in the cases subsequent to Young, we have largely glossed over the underlying rationale and focused on the statement that due process does not force the State to prove an impossibility. As evidenced by the cases and arguments provided by the majority and the dissent, the result appears to be that this court has provided seemingly contradictory holdings regarding whether the State is required to prove a recent overt act when it filed the SVP petition while the respondent was incarcerated. Compare Albrecht, 147 Wash.2d 1, 51 P.3d 73, with In re Det. of Henrickson, 140 Wash.2d 686, 2 P.3d 473 (2000).
¶ 34 Because of these cases, it is next necessary to understand when it is "impossible" or "absurd" to require the State to prove a recent overt act. Practicalities make a person's potentiality to commit a dangerous act an impossibility. It is this instancethe State's act of incarcerating an individual where we stated it would be absurd to require the State to prove a recent overt act. *97 See Young, 122 Wash.2d at 41-42, 857 P.2d 989; Henrickson, 140 Wash.2d at 695-96, 2 P.3d 473; lead opinion at 14-15. The absurdity, however, does not exist from the fact that the facts render the burden impossible for the State to meet. If that were so, then the State would be allowed to convict someone for committing three out of four elements of a crime because the fourth was impossible to prove. Rather, the absurdity comes from the fact that incarceration can preclude the alleged SVP from having the opportunity to commit recent overt acts against the type of victim the alleged SVP is predisposed to victimize. In these situations, as the Martin court noted, although there could be no proof of a recent overt act, the facts could still demonstrate the person has a mental illness and is sufficiently dangerous to justify the curtailment of that person's liberty. 107 Cal.App.3d at 725, 165 Cal.Rptr. 773. However, if it could be shown that the alleged SVP had adequate opportunity while being incarcerated to commit a recent overt act but did not, then the civil commitment would not be narrowly tailored to protect his or her liberty interest.[2] Because that person's due process rights would be violated, we should require proof of a recent overt act if the alleged SVP had an opportunity to commit a recent overt act.[3]
¶ 35 Applying that standard to this case, Fair has been diagnosed with pedophilia, urophilia, and paraphilia. He has a behavioral pattern of committing acts against young children, particularly minor girls. In June 2004, at the time the State filed its SVP petition, Fair had been incarcerated since November 1989, in part because of a sentence for a sexually violent crime.[4] During that time, Fair did not have access to young children, the segment of society he is predisposed to victimize. As a result, it would be absurd to require the State to prove a recent overt act because it is entirely possible that Fair has a mental illness that renders him a danger to society, particularly young children. Due process does not require the State to prove Fair committed a recent overt act against a young child given incarceration has prevented Fair from having access to young children since November 1989.[5] Because *98 Fair's lengthy incarceration prevented him from having the opportunity to commit a recent overt act against a young child, I concur with the majority that the State was not statutorily or constitutionally required to prove a recent overt act.
WE CONCUR: CHARLES W. JOHNSON, Justice.
SANDERS, J. (dissenting).
¶ 36 The trial court convicted David T. Fair of a sexually violent offense on September 27, 1988, but then suspended his sentence under a special sex offender sentencing alternative,[1] conditionally releasing him to community supervision on February 15, 1989. After living nine months in the community Fair was arrested for robbery and reincarcerated on November 15, 1989. Years after Fair completed his sentence for the sex offensebut while he was still incarcerated for robberythe State petitioned to commit him as a sexually violent predator (SVP).[2] When the State filed this petition, it did not allege Fair had committed a "recent overt act." However the State must allege and prove a recent overt act under these facts to satisfy the plain language of former RCW 71.09.030 (2008) and In re Detention of Albrecht, 147 Wash.2d 1, 51 P.3d 73 (2002).
¶ 37 Former RCW 71.09.030 is plain on its face:
When it appears that: (1) A person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement on, before, or after July 1, 1990; ... or (5) a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act; and it appears that the person may be a sexually violent predator, the prosecuting attorney of the county where the person was convicted or charged or the attorney general if requested by the prosecuting attorney may file a petition alleging that the person is a "sexually violent predator" and stating sufficient facts to support such allegation.
(Emphasis added.)[3] Fair fits within the plain text of this statute because the court previously released him from total confinement after his sex offense but before the State filed its petition. He was convicted in September 1988, was released from total confinement in February 1989, and was then reincarcerated for robberynine-months laterin November 1989. On June 23, 2004 the State filed its SVP petition shortly before Fair's release date for the robberylong after he had completed his other sentence. Under the plain language of the statute, therefore, the State has an obligation to allege and prove a recent overt actwhich it did not. Statutes such as this, which curtail civil liberties, are strictly construed so as not to expand their scope beyond that minimally required by the language itself. In re Det. of Martin, 163 Wash.2d 501, 508, 182 P.3d 951 (2008); In re Det. of J.R., 80 Wash.App. 947, 956, 912 P.2d 1062 (1996); In re Det. of Swanson, 115 Wash.2d 21, 31, 804 P.2d 1 (1990); Dunner v. McLaughlin, 100 Wash.2d 832, 850, 676 P.2d 444 (1984); In re Det. of Cross, 99 Wash.2d 373, 379, 662 P.2d 828 (1983). Therefore, application of the plain language of the statute should end the case.
¶ 38 Notwithstanding the plain statutory text, the lead opinion relies upon In re Detention of Henrickson, 140 Wash.2d 686, 2 *99 P.3d 473 (2000), to argue the State need not allege or prove a recent overt act. See lead opinion at 93; concurrence at 95. But Albrecht holds otherwise. 147 Wash.2d at 3, 51 P.3d 73. Albrecht held the State must prove a recent overt act to commit an individual previously released from total confinement into the community:
We are asked to determine whether the State must allege a recent overt act in order to commit an offender as a sexually violent predator when the offender has been released from total confinement into the community and then returned to total confinement. We conclude that after a person has been released into the community, due process would be subverted by failing to require proof of a recent overt act.
Id. Albrecht controls this case because the legal issues and procedural postures are virtually identical. Albrecht, like Fair, was convicted of a sexually violent offense and then released from total confinement into community placement. After 30 days in the community Albrecht was rearrested for violating conditions of community placement by allegedly offering two boys 50 cents to follow him. This court concluded Albrecht's violation did not qualify as a recent overt act, which the State had to prove in order to commit him.
¶ 39 In Albrecht we relied upon former RCW 71.09.030(5) as well as the due process clause of the Fourteenth Amendment to the United States Constitution to mandate this result:
While due process does not require that the absurd be done, once the offender is released into the community, as Albrecht was, due process requires a showing of current dangerousness. Foucha [v. Louisiana], 504 U.S.[71,] 80[, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)]. This conclusion is supported by the plain meaning of the statute. See RCW 71.09.030(5), which permits the State to file a sexually violent predator petition where "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act."
Albrecht, 147 Wash.2d at 10, 51 P.3d 73.[4] The lead opinion relies on Henrickson yet Albrecht distinguished the cases:
Our opinion speaks only to the limited situation where the State files a sexual predator petition on an offender (1) who has been released from confinement (2) but is incarcerated the day the petition is filed (3) on a charge that does not constitute a recent overt act.
Id. at 11 n. 11, 51 P.3d 73. That is precisely the situation here.
¶ 40 Having said this, I concede the lead opinion's point that Fair's release from custody and subsequent reincarceration was more recent in Albrecht than here. Lead op. at 93. However that is a difference without a distinction.
¶ 41 First, Fair fits within the literal language of former RCW 71.09.030(5) just as much as Albrecht did. The statute does not require any temporal relationship between when the individual is released from confinement and when the State files its petition; it only requires the release precede the filing.
¶ 42 Second, this makes sense. The lead opinion's claim that a more remote release date "would not be recent or current evidence of his present dangerousness," lead op. at 93, misses the point of this statute: requiring that the State offer evidence to justify severely depriving someone's liberty interest, concurrence at 96 (citing In re Detention of Young, 122 Wash.2d 1, 40-41, 857 P.2d 989 (1993)).[5]
*100 ¶ 43 If Fair was not a sex predator during his nine months in the communityno matter how long ago that wasthere is still no such evidence he is one today. The State improperly based its petition on Fair's conduct before his nine-month release in 1989. Fair committed no recent overt act while he was in the community for nine months and has committed no overt act since. The lead opinion disregards the theoretical purpose of the statute: treatment and incapacitation of those allegedly incapable of controlling their behavior. The lead opinion ignores the legislative finding that the alleged condition is "very long term." RCW 71.09.010. The concurrence properly concludes the overt act requirement was designed to ensure "the mental illness [is] real and current enough to justify the deprivation of liberty" but forgetslike the lead opinionthe most important point: Fair did not commit an overt while free in the community for nine months. Concurrence at 96 (discussing how Young relies on People v. Martin, 107 Cal.App.3d 714, 165 Cal.Rptr. 773 (1980) to hold State must prove a recent overt act).[6]
¶ 44 Indeed, Fair's release from confinement to nine months in the community may not have been "recent," but it stands the due process clause on its head not to require proof of an overt act that is at least as recent as the last opportunity to reoffend. U.S. Const. amend. XIV, § 1. This court should reverse the Court of Appeals for improperly allowing the State to commit Fair without alleging and proving a recent overt act.
¶ 45 Accordingly I disagree with the lead opinion and its concurrence.
WE CONCUR: GERRY L. ALEXANDER, C.J., and TOM CHAMBERS, J., result only.
NOTES
[1] See former RCW 9.94A.120(7) (1988). The SSOSA was recodified to RCW 9.94A.670 in 2000. Laws of 2000, ch. 28, §§ 5, 20.
[2] Fair was transferred pursuant to the agreement on detainers act, which allows Washington to take temporary custody of prisoners incarcerated in other states for the purpose of criminal trials. Ch. 9.100 RCW.
[3] Dr. Doren defined "urophilia" as sexual fantasies involving urine.
[4] Fair waived his right to a jury trial.
[5] The statute defines "`[r]ecent overt'" act as "any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." Former RCW 71.09.020(10).
[6] Fair does not argue that Washington's constitution provides greater protections than the federal constitution; our analysis under both constitutions is the same. See City of Spokane v. Douglass, 115 Wash.2d 171, 176-77, 795 P.2d 693 (1990).
[7] Requiring proof of a recent overt act by an incarcerated sex offender could also lead to other absurd results. As we have previously noted, such a rule could mean that any post-arrest supervised release for whatever reason would provide the opportunity to circumvent the distinctions of the SVPA. Henrickson, 140 Wash.2d at 696, 2 P.3d 473. Such a rule would undermine the legislature's purpose for SSOSAs: "to prevent future crimes and protect society." State v. Young, 125 Wash.2d 688, 693, 888 P.2d 142 (1995). It would provide a disincentive for courts to grant SSOSAs and would set up a conflict between the legislature's interests in treating first time sex offenders and protecting society from more dangerous predators.
[8] Fair argues that Henrickson does not apply to him because he was not incarcerated for a sexually violent offense at the time the SVP petition was filed. We reject that argument below in section III.
[9] See State v. Halgren, 87 Wash.App. 525, 530, 942 P.2d 1027 (1997) (noting sentencing hearing held on March 21, 1996), rev'd, 137 Wash.2d 340, 971 P.2d 512 (1999) (overturning Halgren's exceptional sentence).
[10] "We hold no proof of a recent overt act is constitutionally or statutorily required when, on the day the petition is filed, an individual is incarcerated for a sexually violent offense, or an act that by itself would have qualified as a recent overt act." Henrickson, 140 Wash.2d at 689, 2 P.3d 473 (citation omitted).
[11] Beyond the due process analysis, the rule Fair seeks is undesirable from a policy perspective as well. The State would not be able to successfully petition for commitment of any prisoner in Fair's position because SVPs like Fair who target young girls do not have access to victims while incarcerated.
[1] "`Recent overt act'" is defined as "any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." Former RCW 71.09.020(10) (2006), recodified as RCW 71.09.020(12).
[2] The dissent contends this burden of proof is illusory because we held in Young that the State does not need to prove a recent overt act if an alleged SVP was incarcerated when the petition was filed. I contend that Young was imprecise in its holding. Implicit to Young's and the dissent's reasoning is that there is no opportunity for someone to commit a recent overt act while being incarcerated. The premise to this reasoning is that prisons will segregate prisoners according to their convictions so as to prevent an opportunity to harm other inmates. I dispute such a premise. While prisons and jails are no doubt controlled environments and prisoners can be segregated based upon their crimes and acts done in prison, a male prisoner serving time for raping a male victim can still be placed in the general population of the prison where there is opportunity to harm other prisoners. Due process prevents the State from committing the prisoner as an SVP if he did not act on that opportunity. Both the lead opinion and the dissent fail to account for this situation in their reasoning. While my reasoning likely affects a small segment of potential SVPs, it better comports with the due process requirement that the State must prove a person is currently dangerous before committing him or her.
[3] I must note that using opportunity to distinguish when the State must prove a recent overt act applies only when the alleged SVP is incarcerated. When an alleged SVP is not incarcerated, we can safely assume that there are not the same physical barriers preventing the opportunity of the alleged SVP to commit a recent overt act.
[4] Like the lead opinion, I agree that because the State filed its SVP petition while Fair was incarcerated in part for his sentence for child molestation, the State was not otherwise obligated to prove a recent overt act.
[5] The dissent posits that, although the last time Fair was not in confinement was some 15 years before the State filed its SVP petition, the State was nonetheless required to prove Fair committed a recent overt act during the time he was not in custody in 1989. As the dissent admits, such a requirement would eliminate the State's burden to prove the overt act was recent. The problem with the dissent's argument is that, if Fair had committed an overt act 15 to 20 years ago, that act would not demonstrate Fair is currently dangerous.

The result is that both the lead opinion and the dissent would read elements out of the SVP scheme. The lead opinion would read out the recent overt act requirement if a person is incarcerated, even if there was ample opportunity to commit a recent overt act. The dissent would read out the requirement that the overt act be recent. Following my methodology retains all the elements and better comports with the constitutional requirement that the State can commit someone only if he or she is presently dangerous.
[1] See former RCW 9.94A.120(7) (1988), recodified to RCW 9.94A.670 in 2000. See Laws of 2000, ch. 28, §§ 5, 20.
[2] The Department of Corrections calculated August 30, 2000 as Fair's release date for the sex offense and June 28, 2004 as the release date for the robbery. Clerk's Papers at 52, 56. The State filed its petition on June 25, 2004 during Fair's robbery incarceration.
[3] The concurrence challenges this opinion for relying exclusively on former RCW 71.09.030 while "ignor[ing] the other statutory language and our case law." Concurrence at 95. Instead, it relies on former RCW 71.090.060(1) (2008) to argue Fair was incarcerated so therefore the State does not have to prove a recent overt act. If Fair had been continuously incarcerated since his last sex offense, the concurrence would be correct; however here he had been released for nine months and had ample opportunity to commit a recent overt act, and therefore former RCW 71.09.030 controls.
[4] I agree with the concurrence that under some circumstances a prisoner may have the opportunity to commit a recent overt act while confined and that due process requires said proof in that instance. Henrickson, 140 Wash.2d at 702 n. 5, 2 P.3d 473 (Sanders, J., dissenting) (citing Cindy Struckman-Johnson et al., Sexual Coercion Reported by Men and Women in Prison, 33 J. Sex Res. 67, 67 (1996) (anonymous survey of prisoners revealed 20 percent had been forced or pressured to have sexual contact against their will while incarcerated)). That argument, however, did not carry the day in In re Personal Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993). Perhaps that is an issue we should revisit.
[5] Our statute codified Young, 122 Wash.2d at 41, 857 P.2d 989, which required that the State prove a recent overt act to incarcerate "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement." Former RCW 71.09.030.
[6] Instead, the concurrence argues the State never has to prove an overt act to commit an incarcerated person, unless the person "had adequate opportunity while being incarcerated to commit a recent overt act but did not ...." Concurrence at 97. This proposed burden of proof is illusory since we have held those incarcerated have no opportunity to commit a recent overt act while imprisoned, but "[w]hen an individual has been in the community, the State has the opportunity to prove dangerousness through evidence of a recent overt act." Young, 122 Wash.2d at 41, 857 P.2d 989.